Isaac Dale **MELONSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–95–403CR.

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 25, 1996.

Decided April 2, 1997.

order the promulgation of a PSI when the trial     court assesses punishment.

John E. Sherman, Houston, for appellant.

Michael R. Little, District Attorney, Liberty, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant was charged by indictment with one count of aggravated robbery and one count of aggravated assault. At arraignment, appellant entered a plea of not guilty; however, on the morning of trial appellant entered his plea of guilty to the indictment before the jury and requested the jury assess his punishment. The jury assessed punishment at ninety-nine years imprisonment and a $10,000 fine for the aggravated robbery and twenty years imprisonment and a $10,000 fine for the aggravated assault. Additionally, the jury found that a deadly weapon, a baseball bat, was used or exhibited during the aggravated assault. Appellant now appeals the judgments and sentences below.

Appellant brings forth three points of error, point of error one being:

Whether the evidence on appellants [sic] guilty plea was sufficient to sustain the conviction as to Count I of the indictment.

Point of error two:

Whether the evidence is sufficient to sustain the conviction as to Count II of the indictment.

Point of error three:

Whether appellant's trial counsel was ineffective.

## FACTS

On the evening of July 2, 1995, Brian McFatridge first met appellant outside of a store in Liberty, Texas. They began driving up and down Main Street in Liberty. At some point, appellant, with McFatridge's permission, began driving McFatridge's truck. They picked up two other men and, after riding around, drove to a gas station to purchase gas. There, appellant met a group of young men in a white car and, after a short conversation, appellant returned to the truck and drove McFatridge to a secluded area. The men in the white car were already there. Everyone got out of the vehicles.

Shortly thereafter, McFatridge was hit, kicked, and beaten. Although McFatridge could not state who delivered each blow to him, he (McFatridge) did recall seeing appel-

lant standing in front of him after the victim was struck to the ground. He also recalled seeing a baseball bat with which he was beaten. Appellant did nothing to stop the beating. Several of the men loaded the victim into the back of the truck and accompanied appellant as he drove further down the road. The assault continued. Sometime during the attack the victim apparently lost consciousness. When he awoke, his truck and the men were gone. McFatridge started walking back down the road to find help. Finally, he arrived at a little convenience store, and the police were summoned. The victim was transported by ambulance to Baptist Hospital in Liberty and was hospitalized for two and a half days. Among his injuries were multiple bruises, a head laceration, and a fractured cheek bone. At the time of trial the victim was still suffering back problems and nerve damage in his face.

The Liberty Police Department dispatched a notice for all units to be on the lookout for McFatridge's truck. One of the patrol officers spotted the vehicle when it was almost broadsided and attempted to catch up to it. The dispatcher was notified, and several other law enforcement units joined in a high speed chase after the truck. At one point the appellant stopped the vehicle, and, as the officer approached, the truck immediately took off, "slinging gravel." Appellant drove through Dayton and on to Tarkington where the truck ultimately came to a stop after blowing a tire, traveling on the brake drum, and running into a ditch. When the smoke cleared, the officer saw three black males running from the direction of the truck. The officer gave chase, and at one point he was able to identify one of the three males as Chris Ford. When Ford was picked up, he implicated the other individuals involved and appellant was apprehended.

Appellant gave a taped statement to the police in which he admitted the plan was to beat McFatridge and take his stereo and truck. Appellant admitted to hitting the victim and knocking him to the ground. Matthew Kutack, another participant in the attack on McFatridge, testified that "[r]ight after we started kicking him, he [José Rodriguez] went to the car and got the bat."

When José came back from the car with the bat, Kutack stated "it was obvious he [José] was holding the bat." As the victim was being hit and kicked, appellant stated he saw Rodriguez hitting the victim with the baseball bat. Appellant also admitted to driving the truck while the others continued to beat the victim.

## ANALYSIS

In points one and two, appellant questions the sufficiency of the evidence as to whether it would sustain the convictions on Counts I and II. As to Count I, appellant cites us to the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The critical inquiry on review of the legal sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Appellant cites no cases in support of his contentions relating to Count II, but again asserts the Court must conclude no rational trier of fact could have found each element of the crime beyond a reasonable doubt.

Prior to the indictment being read to the jury, appellant advised the court that he intended to enter a plea of guilty to the jury to permit the jury to proceed straight to punishment. The court admonished appellant pursuant to TEX.CODE CRIM.PROC.ANN. art. 26.13 (Vernon 1989 & Supp.1997). The court also determined that appellant was competent to stand trial and that his decision to plead guilty was freely and voluntarily made.

After the indictment was read to the jury, appellant entered his plea of guilty. The State proceeded with evidence relevant to the issue of punishment. Appellant never requested to withdraw his guilty plea, and appellant did not object to the court's charge instructing the jury to find appellant guilty of both offenses.

Appellant's voluntary plea before the jury is conclusive as to his guilt. A plea of guilty before the jury admits all the elements of the offense. *See Wilkerson v.*

*State,* 736 S.W.2d 656, 659 (Tex.Crim.App. 1987). The duty of the trial court to sua sponte withdraw defendant's plea arises only if evidence that fairly raises issue about his innocence is presented before adjudication of his guilt. *Edwards v. State,* 921 S.W.2d 477 (Tex.App.—Houston [1st Dist.] 1996, no pet.). The evidence at trial clearly established appellant's active participation in the plan to beat McFatridge in order to steal his stereo and truck. Appellant testified at trial that, once he met McFatridge that evening, he did not want him to leave, because they (appellant and the others participating in the offense) wanted to get McFatridge's truck and high speakers. In addition, Matthew Kutack and T.J. Janise, two of the others involved in the commission of the offense, both testified that, after the group beat McFatridge and left him on the side of the road, appellant was the one who drove McFatridge's truck away. We hold the evidence was sufficient to convict appellant on Court I of aggravated robbery.

■ Appellant was not only a participant in the aggravated robbery; he was also a party to the beating. He struck McFatridge in the face and knocked him to the ground. He was aware of the baseball bat being used on McFatridge. He testified he saw José Rodriguez take the baseball bat and strike McFatridge after the group put him (McFatridge) in the back of the truck. As appellant drove McFatridge's truck further down the road, appellant stated he heard the bat "goin' boom, boom, boom ...," and saw José hitting McFatridge again with the bat. Based on the testimony detailed above, we hold the evidence was sufficient to convict appellant of aggravated assault under the law of parties, as provided in the charge on Count II. Appellant was physically present at the commission of the offenses and participated in and encouraged their commission by his words and agreement. The evidence shows at the time of the offenses the parties were acting together, each doing some part to execute a common purpose. *See Cordova v. State,* 698 S.W.2d 107 (Tex.Crim.App. 1985), *cert. denied,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). Appellant's points of error one and two are overruled.

In his third point of error, appellant questions "[w]hether appellant's trial counsel was ineffective," claiming trial counsel's performance fell below "the wide range of professionally competent assistance" contemplated by the Sixth Amendment to the United States Constitution. Under the Sixth Amendment, the proper standard for determining claims of ineffective assistance of counsel in the guilt/innocence phase of the trial is the standard adopted by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was, in turn, adopted by Texas in *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App.1986). *Jackson v. State,* 877 S.W.2d 768, 770–771 (Tex.Crim. App.1994).

In *Strickland,* the Supreme Court set out a two-pronged analysis for claims of ineffective assistance. Under the first prong, the defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the "'counsel' guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Under the second prong, the defendant must show that counsel's deficient performance prejudiced the defense. *Id.* To show prejudice, "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance. In addition, when reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065.

It must be remembered, of course, that the right to effective assistance of counsel merely insures the right to reasonably effective assistance. *Ingham v. State,* 679 S.W.2d 503,

509 (Tex.Crim.App.1984). The constitutional right to counsel does not mean errorless counsel. *Id.* at 509. Even though a trial counsel may, in some respects, render sub-par assistance, in order for that sub-par performance to constitute ineffective assistance of counsel, there must be a showing that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have differed had trial counsel's assistance been effective. *Hernandez,* 726 S.W.2d at 59.

■ The test for effective assistance of counsel at the punishment stage of a trial is the "reasonably effective assistance" standard of *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980), rather than the test articulated in *Strickland. Ex parte Walker,* 777 S.W.2d 427, 430–31 (Tex.Crim.App.1989); *Ware v. State,* 875 S.W.2d 432, 434–35 (Tex. App.—Waco 1994, pet. ref'd). The test is:

1. whether the defendant received reasonably effective assistance of counsel, i.e.,whether counsel was reasonably likely to render effective assistance; and

2. whether counsel reasonably rendered effective assistance.

*Ex parte Langley,* 833 S.W.2d 141, 143 (Tex. Crim.App.1992). The "reasonably effective assistance" standard has been explained to mean counsel " 'reasonably likely to render, *and rendering,* reasonably effective assistance.' " *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.App.1991). When reviewing trial counsel's representation under the *Duffy* standard, it is necessary to examine the "totality of the representation," which necessarily includes pre-trial representation, the guilt-innocence stage of the trial, and the punishment stage. *Ex parte Walker,* 777 S.W.2d at 431.

■ Ineffective assistance of counsel may be raised for the first time on appeal. *See Randle v. State,* 847 S.W.2d 576, 580 (Tex. Crim.App.1993); *Dunn v. State,* 650 S.W.2d 139, 140–41 (Tex.App.—Houston [14th Dist.] 1983, no pet.). A motion for new trial is a prerequisite, however, for a point of error on appeal where it is necessary to adduce facts of a matter not otherwise shown in the record. Tex.R.App.P. 30(a).

■ In the instant case, appellate counsel lists some six allegations of "deficient performance" and then attempts to show how each "omission" by trial counsel was deficient in its own way. The six alleged deficiencies are as follows:

1. Counsel failed to investigate, or interview witnesses;

2. Counsel failed to object to the hearsay statement by the State on direct examination of Chris Ford;

3. Counsel failed to object to the State's questioning of Chris Ford in an attempt to show intimidation of Ford by family members of the appellant in the courtroom;

4. Counsel failed to object to leading questions, hearsay questions calling for speculative answers during the entire direct testimony of Ford;

5. Counsel failed to object to the jury charge in No. 21,053—Count I of the indictment on the ground that it was an incorrect statement of the applicable law;

6. Counsel failed to object to Count II of the jury charge on the ground that the finding that appellant used, or exhibited a deadly weapon to-wit: a baseball bat, or he knew that a deadly weapon, to-wit: a baseball bat, would be used or exhibited, was not supported by the evidence.

Having examined the six deficiency allegations, we find that the one dealing with the failure to investigate or interview witnesses is closest to being "per se" prejudicial, if correct. However, appellant cites nothing in the record to support his assertion that counsel failed to interview eyewitnesses prior to trial. Without any evidence in the record establishing the alleged failure to investigate or interview witnesses, it cannot be shown that trial counsel's performance was deficient. *See Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985).

■ Appellant also alleges other instances of ineffective assistance of counsel occurring after his guilty plea. He points to trial counsel's failure to object to hearsay statements and leading questions during the State's direct examination of Chris Ford and to trial counsel's deficient cross examination of Ranger Leal. Appellant does not cite any case authority supporting his allegations and fails to provide any argument beyond his conclusory assertions. Appellant must not only specifically identify the deficiencies in counsel's performance, but must also identify the specific objection that should have been made and provide authority in support of his argument that the objection would have been meritorious. *See Valdes–Fuerte v. State,* 892 S.W.2d 103, 112 (Tex.App.—San Antonio 1997, no pet.). We will not substitute speculation for a properly developed record supported by legal authority. *See Runnels v. State,* 860 S.W.2d 545, 547 (Tex.App.—Beaumont 1993, pet. ref'd.); TEX.R.APP.P. 74(f).

Appellant further complains of ineffective assistance regarding trial counsel's failure to object to the jury charges for Count I and Count II. He contends the charge is confusing and misleading because, rather than giving the jury the range of punishment, the charge instructs the jury to "set punishment." In actuality, however, the charges for Count I and Count II both give the ranges of punishment for the two offenses in question.

■ In addition, appellant complains of the following statement in the charge concerning Count I: "If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole." Appellant points out that, under applicable law, he could not be sentenced to less than five years. It is appellant's conclusion that this fact, coupled with the reference in the quoted sentence to four years, is confusing and misleading to the jury, and that, by failing to object to that part of the charge, trial counsel was ineffective. Such is not the case, however. The sentence in question is only applicable if the defendant's term is less than four years. The range of punishment set forth in both charges indicates the term is five years or

more. Therefore, it is self-evident that the sentence relating to a term of less than four years does not apply. Moreover, appellant cites no case law, statute, or rule supporting his contention of reversible error in the charge; nor does he analyze how he may have been harmed by the court's instructions. The sentence in question is taken directly from TEX.CODE CRIM.PROC.ANN. art. 37.07 § 4(a) (Vernon Supp.1997) and was required to be given under the circumstances of the case. We, therefore, find no merit to his claim of ineffective assistance of counsel regarding the charge for Count I. *See Heiselbetz v. State,* 906 S.W.2d 500, 512 (Tex.Crim. App.1995); *Howard v. State,* 894 S.W.2d 104, 110 (Tex.App.—Beaumont 1995, pet. ref'd); TEX.R.APP.P. 74(f).

■ Finally, appellant claims trial counsel was ineffective for failing to object to the charge on Count II regarding the use of a deadly weapon, specifically a baseball bat. Appellant again asserts that trial counsel failed to investigate the facts and interview witnesses and further argues that, had trial counsel done so, he would have discovered that appellant did not use a bat during the assault and did not know and could not have known that José Rodriguez had a bat before the assault. We again point out there is nothing in the record to substantiate the allegations concerning trial counsel's failure to investigate the facts and interview witnesses. Without such evidence in the record, we cannot conclude trial counsel was ineffective.

Moreover, appellant does not discuss or acknowledge the inclusion of a parties charge in Count II. Pursuant to the wording of the parties charge, the jury could find (1) that appellant himself used or exhibited the deadly weapon during the aggravated assault on McFatridge or during the immediate flight therefrom; or, (2) that appellant was a party to the aggravated assault on McFatridge. *See* TEX.CODE CRIM.PROC.ANN. art. 42.12 § 3g(2) (Vernon Supp.1997).

Appellant again provides us with no case law, statute, or rule concerning his allegations of error in the charge for Count II. As with appellant's other allegations of ineffective assistance of counsel, we find no merit to

his claim regarding the charge in Count II. Point of error three is overruled.

The judgments and sentences below are affirmed.

AFFIRMED.